David J. Bodney (006065)
bodneyd@ballardspahr.com
Daniel A. Arellano (032304)
arellanod@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: 602.798.5400
Facsimile: 602.798-5595

Scott D. Ponce (admitted *pro hac vice*)
scott.ponce@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: 303.374.8500
Facsimile: 305.789.7799

Benjamin A. Taormina (admitted *pro hac vice*)
benjamin.taormina@hklaw.com
HOLLAND & KNIGHT LLP
515 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephone: 354.525.1000
Facsimile: 954.463.2030

*Attorneys for Defendant Paradigm Treatment Center, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shanna Sadeh,<br><br>     Plaintiff,<br><br>vs.<br><br>Paradigm Treatment Center, LLC, Chelsea Neumann, M.D. and Chelsea Neumann, M.D., Inc.,<br><br>     Defendants. | No. 2:20-cv-01466-GMS<br><br>**DEFENDANT PARADIGM TREATMENT CENTER, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

Defendant Paradigm Treatment Center, LLC ("Paradigm"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves for the entry of an Order dismissing Plaintiff's first amended complaint (DE 15-1) with prejudice because it fails to state a claim. The grounds for this Motion are:

## I. INTRODUCTION

There are "high-conflict" divorce and custody proceedings pending in Arizona state court between "Mother" and "Father" (as the amended complaint refers to them) (Am. Compl., ¶¶13-14, 43). Mother and Father have an adolescent child (the "Adolescent"). The state court appointed a therapeutic interventionist to oversee the provision of psychological therapy to the Adolescent, and ordered Mother and Father to comply with the therapeutic interventionist's recommendations (*Id.*, ¶¶14-15, 22). The therapeutic interventionist recommended that the Adolescent receive therapy from Plaintiff (*Id.*, ¶¶22-23, 25-26). Plaintiff is a former attorney who now works as a psychologist (*Id.*, ¶¶5-6).

After a few months of receiving treatment, Plaintiff and the therapeutic interventionist determined that the Adolescent would be better served by residential treatment (*Id.*, ¶¶40-43). Plaintiff selected Paradigm to provide the residential treatment (*Id.*, ¶43). Paradigm "owns and operates adolescent treatment centers in California which specialize in the diagnosis, management, and treatment of behavioral issues, substance abuse and other such addictions, as well as mental health and behavioral disorders affecting youth" (*Id.*, ¶8). The Adolescent received residential treatment at Paradigm's facility in Malibu, California from July 15, 2019 through August 23, 2019 (*Id.*, ¶¶45, 67). After the Adolescent was discharged from Paradigm's facility, Plaintiff resumed providing therapy to the Adolescent (*Id.*, ¶67).

On August 29, 2019, Paradigm sent an email to Plaintiff and the therapeutic interventionist (Dr. Mellen) to which a letter was attached (*Id.*, ¶29). The therapeutic interventionist had the responsibility of reporting "the family member's (sic) diagnoses, functioning, goals, and progress (or lack of progress) to [the] Family Court" (*Id.*, ¶25). The email from Paradigm said:

2

> Hello Dr. Sadeh and Dr. Mellen,
>
> We hope that you received [the Adolescent's] inquired files from Paradigm via Dr. Sadeh's fax. We also ask that you please forward the attached letter to the judge along with your findings. The parents are notified of our suggested letter to the judge as well.
>
> Best,
> Paradigm Team

(*Id.*, ¶69).

The letter that was attached to the email was addressed "[t]o the judge presiding over the family court proceedings for [the Adolescent]" (the "Letter") (Am. Compl., ¶¶2, 69; Exhibit 1).[1] The Letter is printed on Paradigm's letterhead and is signed by Defendant Chelsea Neumann, M.D., who is a psychiatrist and the medical director of Paradigm's facility in Malibu (Am. Compl., ¶9).

In the Letter, Dr. Neumann provided her visual and clinical observations regarding the Adolescent; her professional opinion regarding the quality of the therapy that Plaintiff was providing to the Adolescent and its effect on the Adolescent; and the type of therapy Dr. Neumann believed would most benefit the Adolescent on a going-forward basis (Ex. 1). The Letter also recommended that the Arizona court appoint a guardian *ad litem* and attorney for the Adolescent to advocate for her best interests (*Id.*). After reading the Letter, the state court judge said that its contents were "very disturbing" and the judge "ordered" Plaintiff to stop providing therapy to the Adolescent (Am. Compl., ¶76).

Plaintiff initiated this litigation by filing her initial complaint, which alleged that five specific statements in the Letter were false and defamed her (DE 1-1 (ECF pages 5-11 of 22)). On the basis of those allegedly defamatory statements in the Letter, the three-count

---

[1] The amended complaint quotes parts of the Letter, but not the entirety of the Letter, and the Letter is not attached to the complaint. Paradigm has attached a redacted copy of the Letter (and the cover email) to this Motion. Fed. R. Civ. P. 5.2(a). It is appropriate for Paradigm to attach the Letter to this Motion – and for the Court to consider it – because the Letter is a document "whose contents are alleged in a complaint and whose authenticity no party questions, but which [is] not physically attached to the [plaintiff's] pleading." *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks omitted).

3

initial complaint purported to state claims for defamation *per se*, false light invasion of privacy, and tortious interference. Paradigm moved to dismiss the initial complaint because each claim is barred by Arizona's litigation privilege (DE 10).

Instead of responding to the motion to dismiss, Plaintiff filed the amended complaint, as permitted by Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. The amended complaint repeats the initial complaint's allegations that there are five specific statements in the Letter that are false and defame Plaintiff (Am. Compl., ¶¶2, 92-97). This time, though, Plaintiff alleges that there also are oral and written statements that are false and defame her (*Id.*, ¶¶2, 119, 121).

The amended complaint contains three counts. The *first* count is for defamation *per se* and alleges that "Defendants published false and defamatory statements about [Plaintiff's] professional services verbally and in writing" (*Id.*, ¶119). The *second* count is for false light invasion of privacy and mentions only the Letter (*Id.*, ¶120) ("The Letter represented in false light [Plaintiff's] involvement in Adolescent's case in many ways . . . ."). The *third* count is for tortious interference, and alleges that "Defendants' defamatory comments, in writing and orally, intentionally and improperly interfered with [Plaintiff's] business relationships" (*Id.*, ¶121). Each claim should be dismissed with prejudice.

## II.   ARGUMENT

**A.   PLAINTIFF'S CLAIMS, TO THE EXTENT THEY ARE PREMISED UPON THE LETTER, ARE BARRED BY ARIZONA'S LITIGATION PRIVILEGE.**

The Arizona court presiding over Mother's and Father's divorce proceedings implemented a psychological therapy plan for the Adolescent. Paradigm was part of that court-ordered treatment plan, as was Plaintiff. At the conclusion of Paradigm's treatment of the Adolescent, Paradigm sent the Letter to Plaintiff and the therapeutic interventionist, and asked them to deliver it to the presiding judge, to whom the Letter was addressed. Paradigm also provided a copy of the Letter to Mother and Father, who were the litigants in the divorce proceedings (and also the minor-Adolescent's parents).

4

The Letter set out Paradigm's medical director's visual and clinical observations of the Adolescent; her professional opinion regarding the quality of the therapy that Plaintiff was providing to the Adolescent and its effect on the Adolescent; and the type of therapy that the medical director believed would most benefit the Adolescent in the future. The amended complaint alleges that certain statements in the Letter give rise to claims for defamation *per se*, false light, and tortious interference.

The claims should be dismissed with prejudice because they are barred by Arizona's litigation privilege, which is an "absolute privilege" that immunizes communications made in connection with judicial proceedings. *Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984); *see also* Restatement (Second) of Torts § 588 ("A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."). The absolute privilege protects "the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition." *Green Acres*, 688 P.2d at 621.

The privilege "protects judges, parties, lawyers, witnesses and jurors," *id.*, and it "extends to 'reports, consultations, and advice' that are relevant to litigation and are prepared 'as preliminary steps in the institution or defense of a case,'" *Yeung v. Maric*, 232 P.3d 1281, 1284 (Ariz. App. 2010) (quoting *Darragh v. Superior Court (Michael)*, 900 P.2d 1215, 1218 (Ariz. App. 1995)). "The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *Green Acres*, 688 P.2d at 621. The application of the privilege is a question of law that is properly raised in a motion to dismiss where its applicability is apparent from the pleadings. *Id.*

To fall within the privilege, the communication "must relate to, bear on or be connected with the proceeding." *Id.* The content "need not be 'strictly relevant,' but need only have 'some reference to the subject matter of the proposed or pending litigation.'" *Id.* (quoting Restatement (Second) of Torts § 586 cmt. c). Arizona courts regularly recognize the privilege. *See Drummond v. Stahl*, 618 P.2d 616, 619 (Ariz. App. 1980); *Yeung*, 232

5

P.3d at 1283-84; *W. Techs., Inc. v. Sverdrup*, 739 P.2d 1318, 1321-22 (Ariz. App. 1986); *Lory v. Federal Ins. Co.*, 122 F. App'x 314, 318 (9th Cir. 2005) (quoting *Green Acres*, 688 P.2d at 621) (applying Arizona law).

The litigation privilege applies not only to claims for defamation, such as the one Plaintiff asserts in the first count of the amended complaint, but also to claims for false light invasion of privacy and tortious interference, such as the ones Plaintiff asserts in the second and third counts of the amended complaint. *See Yeung*, 232 P.3d at 1284 ("This privilege also applies to any matter that constitutes a false light invasion of privacy."); *Drummond*, 618 P.2d at 619 (applying the litigation privilege to a claim for tortious interference). The facts alleged in the amended complaint satisfy each and every element that is necessary to establish the applicability of the privilege and, thus, the amended complaint's failure to state a claim.

*First*, Paradigm was a participant in legal proceedings because it was part of the court-ordered therapy plan for the Adolescent that the state court implemented as part of Mother's and Father's divorce proceedings.[2] *See Green Acres*, 688 P.2d at 621 ("In the area of absolute privileges one of the most common is that involving the participant in judicial proceedings. . . . The privilege protects judges, parties, lawyers, witnesses and jurors.").

Additionally, Paradigm was acting as a witness in providing the state court with its factual observations and professional opinions regarding the past and future course of the Adolescent's therapy under the state court's plan. *See* Restatement (Second) of Torts § 588 ("A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."); *Yeung*, 232 P.3d at 1284 (holding that the privilege "extends to 'reports, consultations, and advice' that are relevant to litigation" (quoting *Darragh*, 900 P.2d at 1218)).

---

[2] Although it is not necessary for the applicability of the privilege, it is worth noting that Plaintiff also was a participant in the legal proceedings because she, too, was part of the court-ordered therapy plan.

6

*Second*, Paradigm sent the Letter in connection with the divorce proceedings because the Letter (a) was addressed to the presiding judge, (b) was sent to Plaintiff and the therapeutic interventionist with a request that they deliver it to the judge along with Plaintiff's findings, (c) was also sent to Mother and Father because they were parties in the proceedings (and the Adolescent's parents), and (d) was acted upon by the presiding judge. *See Green Acres*, 688 P.2d at 621 ("In order to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding.").

*Third*, although the privilege's relevancy requirement is not strict, the Letter was nevertheless "strictly relevant" to the judicial proceedings – and to Paradigm's role in those proceedings – because the Letter set out Paradigm's medical director's visual and clinical observations of the Adolescent; her professional opinion regarding the quality of the therapy that Plaintiff was providing to the Adolescent and its effect on the Adolescent; and the type of therapy that the medical director believed would most benefit the Adolescent in the future and that the Arizona court should implement. *See Green Acres*, 688 P.2d at 621 ("The defamatory content of the communication need not be strictly relevant, but need only have some reference to the subject matter of the proposed or pending litigation.") (internal quotation marks omitted). The Letter also recommended that the Arizona court appoint a guardian *ad litem* and attorney for the Adolescent to advocate for her best interests.

Finally, the amended complaint's allegations that Paradigm was acting to protect a financial interest (¶90) or out of malice toward Plaintiff (¶¶106, 119) are of no consequence because "[t]he defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *See Green Acres*, 688 P.2d at 621.

The amended complaint should be dismissed with prejudice because each of the claims it purports to assert are barred by the litigation privilege.

B.  **PLAINTIFF'S CLAIMS, TO THE EXTENT THEY ARE PREMISED UPON STATEMENTS *OTHER* THAN THE LETTER, SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiff has chosen to tie all of three of her claims to the publication of allegedly false and defamatory statements, such that if the underlying statements are not false and defamatory, then all three of Plaintiff's claims fail. Whereas the initial complaint was premised solely upon statements contained in the Letter, the amended complaint appears to rely upon statements in the Letter *and* other statements, including oral statements. *See* Am. Compl., ¶119 ("Defendants published false and defamatory statements about [Plaintiff's] professional services verbally and in writing . . . ."); ¶120 ("Plaintiff incorporates by reference paragraphs 1 - 118 herein. The Letter represented in false light [Plaintiff's] involvement in Adolescent's case in many ways . . . ."); ¶121 ("Defendants' defamatory comments, in writing and orally, intentionally and improperly interfered with [Plaintiff's] business relationships.").[3]

As shown above, Plaintiff's claims, to the extent they are premised upon allegedly false and defamatory statements contained in the Letter, are barred by the litigation privilege. As will be shown in this section, Plaintiff's claims – to the extent they are premised upon statements *other* than the Letter – fail to state a claim because the amended complaint does not identify any actionable false and defamatory statements.

1. **The Amended Complaint Does Not Sufficiently Identify Any Allegedly Defamatory Statements Other Than Those In The Letter.**

It is well-settled that a plaintiff must plead factual detail supporting each element of a claim—conclusory statements are decidedly insufficient. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

---

[3] The third count incorporates by reference the allegations contained in paragraphs 1 through 44 (Am. Compl., ¶121). The only communication identified in any of those paragraphs is the Letter, which obviously is a written communication. In light of the third count's reference to oral communications, it is possible (and probably likely) that Plaintiff intended to incorporate by reference more than the first forty-four paragraphs.

8

enhancement.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (internal citations omitted) (brackets in original). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 678.

As applied in the context of allegedly defamatory statements, this means that a plaintiff is required to plead, among other things, who made the statements that he or she is suing upon, the content of each such statement, and why each statement is false. *See e.g., Snyder v. HSBC Bank, USA, N.A.*, 913 F.Supp.2d 755, 778 (D. Ariz. 2012); *Riley v. City of Prescott, Arizona*, 2012 WL 512671, at *8 (D. Ariz. Feb. 16, 2012); *Hedges Industrial Enterprises, Inc. v. Rio Tinto PLC*, 2010 WL 2662270, at *7 (D. Ariz. July 1, 2010).

Plaintiff has failed to state a claim because each count contains conclusory references to allegedly defamatory oral and written statements, but, apart from the Letter, the amended complaint does not identify any such statements. To the extent that Plaintiff's claims are premised upon statements other than those in the Letter, the amended complaint should be dismissed because it does not sufficiently identify those statements.

### 2. The Litigation Privilege Bars Claims Premised Upon Other Statements Because All Of The Conduct Attributed To Paradigm Was Undertaken In The Course Of The State Court's Therapy Program.

Putting aside the amended complaint's failure to identify allegedly false and defamatory statements other than the Letter, ***all*** of the conduct that the amended complaint attributes to Paradigm was undertaken in connection with the therapy being provided to the Adolescent as part of the state court's therapy plan. Thus, to the extent the amended complaint identifies the "other" statements Plaintiff is suing upon, Plaintiff's claims are barred by the litigation privilege.

The litigation privilege is broad: the judicial proceedings in relation to which it

applies "include all proceedings in which an officer or tribunal exercises judicial functions." Restatement (Second) of Torts § 588 cmt. d. Further, "the privilege 'extends to every step in the judicial proceeding until final disposition.'" *W. Techs.*, 739 P.2d at 1322 (quoting W. Prosser & W. Keeton, *The Law of Torts* § 114 at 819 (5th ed. 1984)). It also extends to extra-judicial communications so long as the content and "the recipient of the extra-judicial communication have some relationship to the proposed or pending judicial proceedings." *Green Acres Tr.*, 688 P.2d at 622.

The amended complaint acknowledges that Paradigm provided treatment for the Adolescent only as part of a court-ordered therapy plan that Dr. Mellen, as the court-appointed therapeutic interventionist, was responsible for managing (Am. Compl., ¶¶14-15, 25, 45-46.) The state court's order went so far as to prohibit the parents from engaging any therapist without Dr. Mellen's or the court's consent (*Id.*, ¶15), and Dr. Mellen's recommendation that the Adolescent be discharged from Paradigm was itself presented to the court (*Id.*, ¶65).

Paradigm's delivery of services was thus a concrete step in a process over which the state court "exercised judicial functions," Restatement (Second) of Torts § 588 cmt. d, by virtue of approving and managing the engagement through its court-appointed therapeutic interventionist. As a result, Paradigm was privileged in communicating about the Adolescent's treatment to persons involved in the proceedings, as both the content and recipient of such communications would bear "some relationship to the proposed or pending proceeding." *Green Acres Tr.*, 688 P.2d at 622. Paradigm's statements about the Adolescent's treatment to participants in the proceedings – including the Adolescent, her parents, and her providers – are absolutely privileged

### 3. If Paragraphs 70 Through 75 Are The "Other" Statements, Then They Are Incapable Of Supporting Plaintiff's Claims.

It is possible that Plaintiff intends that paragraphs 70 through 75 of the amended complaint are the allegations identifying the "other" statements upon which her claims are based. If those are, indeed, the other statements on which Plaintiff is suing, then her claims

fail.

### i. Paragraph 70 – Not Providing Appropriate Treatment.

Paragraph 70 of the amended complaint alleges that "Paradigm" told the Adolescent that Plaintiff "was not providing [the Adolescent] with appropriate treatment." This allegation fails at the outset because it does not identify who at Paradigm supposedly made the statement. The amended complaint specifically identifies numerous people associated with Paradigm (¶¶43, 46, 58, 60), yet the amended complaint is notably vague when it comes to identifying who supposedly made this statement. This is crucially important because a principal or employer is *not* automatically liable for allegedly defamatory statements made by all of its agents and employees. *See, e.g., Wichansky v. Zowine*, 150 F.Supp.3d 1055, 1075 (D. Ariz. 2015).

Additionally, this allegation does not support Plaintiff's claims because "Paradigm's" views regarding the quality of Plaintiff's services – that Plaintiff "was not providing [the Adolescent] with appropriate treatment" – is non-actionable opinion. *See, e.g., Partington v. Bugliosi*, 56 F.3d 1147, 1153, 1157-58 (9th Cir. 1995) (involving statements that an attorney "provided inadequate representation to his client" and holding that statements of opinion regarding the quality of professional services are non-actionable because there is no objective means by which to measure or prove their truth or falsity); *Gardner v. Martino*, 563 F.3d 981, 986-87 (9th Cir. 2009) (addressing the distinction between actionable statements of fact and non-actionable opinion); *Turner v. Devlin*, 848 P.2d 286, 292 (Ariz. 1993) (holding that a defendant's subjective characterization of a plaintiff's conduct is not actionable where there is no benchmark by which to judge the statement's accuracy). Indeed, as if to prove the subjective nature of opinions regarding the quality of professional services, Plaintiff alleges that she has an "expert opinion letter" from someone who believes that Plaintiff provided appropriate treatment (Am. Compl., ¶118).

The allegation in paragraph 70 is insufficient to support Plaintiff's claims.

11

### ii. *Paragraph 71 – Showing The Adolescent The Letter*

Paragraph 71 of the amended complaint alleges that "Paradigm showed [the Adolescent] the Letter." This allegation cannot support Plaintiff's claims because of the litigation privilege. The Adolescent was the subject of Mother's and Father's custody proceedings, and was a subject of the therapy plan that the state court implemented as part of those proceedings. Showing the Adolescent the Letter that was being submitted to the judge who would be making decisions regarding the Adolescent's therapy and life – not to mention discussing with the Adolescent the progress and efficacy her therapy – is protected by the litigation privilege.

Indeed, Plaintiff states that she, too, explained to the Adolescent the range of options and "type of actions" available to the state court judge and how those options were affected by the progress and efficacy of the therapy (Am. Compl., ¶94). The allegation in paragraph 71 is insufficient to support Plaintiff's claims.

### iii. *Paragraph 72 – Plaintiff's Therapy Notes*

Paragraph 72 of the amended complaint alleges that "Paradigm" showed the Adolescent summaries of clinical notes ***about Adolescent***" that were written by Plaintiff (emphasis added). To be actionable, a false and defamatory statement must be "of and concerning" the plaintiff. *See, e.g., Ultimate Creations, Inc. v. McMahon*, 515 F.Supp.2d 1060, 1064 (D. Ariz. 2007) (granting motion to dismiss); *Hansen v. Stoll*, 636 P.2d 1236, 1240 (Ariz. App. 1981); *Peagler v. Phoenix Newspapers, Inc,*, 560 P.2d 1216, 1222 (Ariz. 1977) (holding that an allegedly defamatory statement must be "concerning" the plaintiff).

Plaintiff alleges in this paragraph that the notes Paradigm showed to Adolescent were "about Adolescent." Because the notes were about Adolescent – and ***not*** "of and concerning" Plaintiff – they cannot support Plaintiff's claims. What's more, this paragraph alleges that the notes were written by ***Plaintiff***. There are no allegations in the amended complaint explaining how Paradigm could be held liable for statements written by Plaintiff. Nor is there any allegation that anything in Plaintiff's summaries was untrue. *See Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989) ("To be

Ballard Spahr LLP
1 E. Washington, Suite 2300
Phoenix, Arizona 85004
Telephone: 602.798.5400

defamatory, a publication must be false . . . ."). The allegation in paragraph 72 is insufficient to support Plaintiff's claims.

### iv.   Paragraph 73 – Adolescent Should Not Live With Father

Paragraph 73 of the amended complaint alleges that "Paradigm" told the Adolescent that "she should not be living with her Father after her discharge." This allegation cannot support a Plaintiff's claims because a statement regarding whether the Adolescent should live with Mother or Father following discharge from the residential treatment is not of and concerning Plaintiff. *See, e.g., Ultimate Creations,* 515 F.Supp.2d at 1064.

### v.   Paragraph 74 – A Doctor Heard What Happened In This Case.

Paragraph 74 alleges that when Plaintiff spoke to "Dr. Beaumont at Phoenix Children's Hospital to consult about Adolescent's first medical appointment without Mother[,] Dr Beaumont informed [Plaintiff] that Dr. Neumann [the medical director at Paradigm's Malibu facility] had called [Dr. Beaumont] and that [Dr. Beaumont] had heard 'what happened' in this case." This allegation cannot support Plaintiff's claims because it does not sufficiently plead the making of a false and defamatory statement. *See e.g., Iqbal*, 556 U.S. at 678; *Snyder*, 913 F.Supp.2d at 778; *Riley*, 2012 WL 512671, at *8; *Hedges Industrial*, 2010 WL 2662270, at *7.

For example, this paragraph alleges that Dr. Neumann told Dr. Beaumont "'what happened' in this case." What is "this case"? Is it the litigation between Mother and Father? Is it the history of the provision of therapy to Adolescent? In either scenario, what, if anything, did Dr. Neumann say ***about Plaintiff***? And, if anything was said, what makes it false and defamatory? The allegation in paragraph 74 is insufficient to support Plaintiff's claims. *See e.g., Iqbal*, 556 U.S. at 678; *Snyder*, 913 F.Supp.2d at 778; *Riley*, 2012 WL 512671, at *8; *Hedges Industrial*, 2010 WL 2662270, at *7.

### vi.   Paragraph 75 – Paradigm's Medical Record

Paragraph 75 of the amended complaint alleges that

> [a] Paradigm medical record dated 9/3/2019 signed by Dr. Neumann documented her investigation into whether Mother had MBP [Munchasen By Proxy] (e.g., "Dr. Carlson had no concerns about

13

believing [Mother] was intentionally harming [Adolescent]" and "Dr. Beaumont denied concerns regarding Factitious disorder imposed on another from mother to [Adolescent].") Dr. Neumann specifically noted that she informed Dr. Beaumont of "discharge recommendations including concerns regarding separation from mother and recommendations to continue gun safety monitoring while living with father." Dr. Neumann also noted that she was continuing to communicate with Mother after Adolescent was discharged.

That allegation does not support Plaintiff's claims because it does not identify *any* statement of and concerning Plaintiff, much less a false and defamatory one. *See, e.g., Ultimate Creations,* 515 F.Supp.2d at 1064. The allegation in paragraph 75 is insufficient to support Plaintiff's claims.

## C.     THE COUNT FOR FALSE LIGHT INDEPENDENTLY FAILS TO STATE A CLAIM.

The second count in the amended complaint purports to state a claim for "false light" (Am. Compl., ¶120) Although Plaintiff refers to it by that diminutive name, the tort is more formally and fully known as false light invasion of privacy. *See, e.g., Godbehere,* 783 P.2d at 784. Regardless of whether this claim is based on the Letter or "other" statements – and putting aside, for now, the fatal obstacles addressed above – Plaintiff cannot state a claim for false light invasion of privacy.

This tort is one of the **privacy-related** claims that Arizona recognizes. *See id.* A claim for false light exists where, among other things, the defendant publishes **private** information regarding the plaintiff. *See id.* at 789 ("Additional protection for free speech comes from the principle that protection for privacy interests generally applies only to private matters."). Here, the amended complaint does not allege that Paradigm published information relating to Plaintiff's *private matters*. Instead, the amended complaint alleges that Paradigm published information relating to Plaintiff's performance and conduct in connection with the therapy plan that was mandated, implemented, and overseen by the state court. *See, e.g.,* Am. Compl., ¶120; Ex. 1. Commenting upon Plaintiff's performance and conduct in providing court-ordered services is the opposite of publishing information

relating to Plaintiff's private affairs. Plaintiff's claim for false light invasion of privacy should be dismissed with prejudice.

## D. THE COUNT FOR TORTIOUS INTERFERENCE INDEPENDENTLY FAILS TO STATE A CLAIM.

The third count of the amended complaint purports to state a claim for tortious interference. Plaintiff alleges that Paradigm tortiously interfered with her "business expectation to provide services to Adolescent" and harmed her business by damaging her reputation in "Scottsdale and surrounding communities" (Am. Compl., ¶121). As addressed above, the state court terminated Plaintiff's business relationship with the Adolescent after reading the Letter (*Id.*, ¶76), and the litigation privilege bars any claim for tortious interference with Plaintiff's business relationship with the Adolescent.

To the extent that Plaintiff alleges that Paradigm harmed her reputation and thus tortiously interfered with a business expectancy she had with the community at large, she has failed to state a claim for tortious interference. Specifically, stating a claim for tortious interference requires Plaintiff to plead, among other things, the following three elements: "(1) existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; . . . and [3] resultant damage to the party whose relationship has been disrupted . . . ." *See, e.g., Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005); *see also Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1041 (Ariz. 1985) *superseded by statute on other grounds*. The amended complaint does not sufficiently plead these elements.

*First*, Plaintiff's allegation that Paradigm injured her reputation which, in turn, harmed her business opportunities in Scottsdale and the surrounding communities (Am. Compl., ¶121) does not allege the requisite actual and identifiable contract or business relationship. *See, e.g., Dube v. Likins*, 167 P.3d 93, 100-01 (Ariz. App. 2007) (collecting decisions) ("Dube also has failed to allege that he had a valid business expectancy. Although the tort of tortious interference with a business expectancy covers situations that the tort of intentional interference with a contract does not, the former has only been

Ballard Spahr LLP
1 E. Washington, Suite 2300
Phoenix, Arizona 85004
Telephone: 602.798.5400

15

available in those situations where the plaintiff can identify the specific relationship with which the defendant interfered."); *Thermolife International, LLC v. Gaspari Nutrition, Inc.*, 871 F.Supp.2d 905, 912 (D. Ariz. 2012) (quoting *Dube*, 167 P.3d 93) ("A plaintiff must be able to 'identify a specific relationship with which the defendant interfered' to state a plausible claim for relief; the speculative hope of a business expectancy is not enough.").

*Second*, because Plaintiff has failed to identify the specific relationships with which Paradigm supposedly interfered, she has necessarily failed to plead the element that requires Paradigm to have knowledge of those specific relationships.

*Third*, Plaintiff characterizes her injury in this regard as a damaged reputation in various communities (Am. Compl., ¶120) ("Defendants tortiously interfered with my business relations. Defendants knew . . . that my business depended upon my reputation in Maricopa Family Court, Scottsdale, and surrounding communities."). This allegation does not support a claim for tortious interference because that tort "redresses injury sustained through tortious interference with a specific business relationship;" whereas "[d]efamation . . . redresses damages associated with general harm to reputation caused by published defamatory statements." *See Stoyanoff v. Crocodiles Not Waterlillies, L.L.C.*, 2012 WL 13024085, at *10 (D. Ariz. Feb. 16, 2012) (citing *Dube*, 167 P.3d at 102-03). Thus, the claim for tortious interference – which Plaintiff frames as relating to a harm to her reputation in certain communities – is a miscast claim for defamation and is duplicative of her claim for defamation *per se*.

Plaintiff's claim for tortious interference should be dismissed with prejudice.

### III.   CONCLUSION

For these reasons, the amended complaint should be dismissed with prejudice

16

DATED this 24th day of August, 2020.

BALLARD SPAHR LLP

By: */s/ Daniel A. Arellano*
   David J. Bodney
   Daniel A. Arellano
   1 East Washington Street, Suite 2300
   Phoenix, AZ 85004

and

HOLLAND & KNIGHT LLP

By: */s/ Scott D. Ponce*
   Scott D. Ponce
   Benjamin A. Taormina
   701 Brickell Avenue, Suite 3300
   Miami, FL 33131

*Attorneys for Defendant Paradigm Treatment Center, LLC*

**LRCiv 12.1(c) Certification**

Pursuant to LRCiv 12.1(c), Defendant Paradigm Treatment Center, LLC ("Paradigm") hereby certifies, by its undersigned counsel, that before filing this Motion to Dismiss, Paradigm notified Plaintiff of the issues asserted in the Motion, and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the Plaintiff.

DATED this 24th day of August, 2020.

BALLARD SPAHR LLP

By: */s/ Daniel A. Arellano*
David J. Bodney
Daniel A. Arellano
1 East Washington Street, Suite 2300
Phoenix, AZ 85004

and

HOLLAND & KNIGHT LLP

By: */s/ Scott D. Ponce*
Scott D. Ponce
Benjamin A. Taormina
701 Brickell Avenue, Suite 3300
Miami, FL 33131

*Attorneys for Defendant Paradigm Treatment Center, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of August 2020, I electronically transmitted the foregoing document to the U.S. District Court for the District of Arizona Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

I further certify that a copy of the foregoing was sent via email and U.S. mail this same date to:

Shanna Sadeh
13951 N. Scottsdale Rd. #123
Scottsdale, AZ 85254
doctorsadeh@insideoutadvocate.org
*Pro Se Plaintiff*

Michele G. Thompson
Udall Law Firm, LLP
4801 E. Broadway Blvd., Suite 400
Tucson, Arizona 85711-3638
mthompson@udalllaw.com
*Counsel for Defendants Chelsea Neumann, M.D. and Chelsea Neumann, M.D., Inc.*

By: */s/ Daniel A. Arellano*

Ballard Spahr LLP
1 E. Washington, Suite 2300
Phoenix, Arizona 85004
Telephone: 602.798.5400